**Dorothy E. DREYER and Naomi D. Strayer, Appellees,**

v.

**ARCO CHEMICAL COMPANY, a DIVISION OF ATLANTIC RICHFIELD COMPANY, Appellant.**

No. 85–3476.

United States Court of Appeals, Third Circuit.

Argued April 28, 1986.

Decided Sept. 22, 1986.

Jess Womack (argued), Atlantic Richfield Co., Philadelphia, Pa., for appellant.

Stanley M. Stein (argued), Feldstein Grinberg Stein & McKee, Pittsburgh, Pa., for appellees.

Before SLOVITER and STAPLETON, Circuit Judges, and LONGOBARDI, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

ARCO Chemical Co. challenges a jury's decision that it violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA), when it terminated the employment of two long-term employees, plaintiffs Naomi Strayer and Dorothy Dreyer. It further contends that there was no evidence to support the jury's finding that its conduct as to Dreyer constituted a "willful" violation of the ADEA, entitling her to double damages.

### I.

During a corporate reorganization in 1981 and 1982, ARCO consolidated the subunits of one of its divisions, and as a consequence reduced the size of its work force at its Beaver Valley plant in Monaca, Pennsylvania. One of the departments of the plant affected by this reduction in force was the Financial Controls Department, which ARCO decided to reduce from 26 employees to 18. Plaintiffs Dreyer and Strayer were both employees in this department, and, according to ARCO, both were terminated as a result of the restructuring. Each had been offered the possibility of voluntary retirement under a special retirement plan applicable to employees over fif-

* Honorable Joseph J. Longobardi, United States District Court for the District of Delaware, sitting by designation.

ty-five years of age, neither volunteered to accept the company's offer, both were then terminated, and, only then, did they accept early retirement under protest. ARCO does not contend that their acceptance of the early retirement benefits precludes them from exercising their rights under the ADEA.

Dreyer and Strayer filed suit together, claiming that ARCO's termination of their employment violated the ADEA and that the violations were intentional and willful. The jury returned a verdict for both plaintiffs. Based on the parties' stipulation as to damages, it awarded $66,043.99 in backpay to Strayer and $68,367.75 to Dreyer. In addition, the jury found that ARCO's discharge of Dreyer was "malicious" by so stating on its verdict sheet and awarded her statutory liquidated damages in the amount of her backpay for a total award of $136,725.50. *See* 29 U.S.C. § 626(b). The district court denied ARCO's motions for judgment notwithstanding the verdict and a new trial.

On appeal, ARCO's principal argument is that the evidence is insufficient to support a finding that it violated the ADEA with respect to the two plaintiffs, or, failing that, to support the jury's finding that it had acted "maliciously" or "willfully" in discharging Dreyer.[1]

## II.

## A.

### *Sufficiency of the Evidence to Support the Verdict*

ARCO's principal argument on appeal is that it came forward with legitimate, non-

discriminatory reasons for retiring Dreyer and Strayer and that neither plaintiff proved that these reasons were pretextual. Preliminarily, ARCO also contends that Strayer did not establish a prima facie case of age discrimination.

The ADEA broadly proscribes discrimination against any individual between 40 and 70 with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a); *see id.* § 631(a). To recover, "a plaintiff must prove by a preponderance of the evidence that age was a determinative factor in the employer's decision." *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253, 256 (3d Cir.1986).

▮▮▮ The order and allocation of proof in an ADEA case alleging disparate treatment on the basis of circumstantial evidence is governed by the three-part division set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII cases. *See Smithers v. Bailar,* 629 F.2d 892, 894 (3d Cir.1980). Under this scheme, the plaintiff must first prove a prima facie case. Then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. If the employer meets this burden, the plaintiff must show that the articulated reason is a pretext for discrimination.[2] At all times, the plaintiff bears the ultimate burden of proving that age was "a determinative factor" in the decision. *See*

---

1. ARCO contends that the court should have charged the jury to subtract from any backpay awarded the amounts that the plaintiffs received under the special early retirement program. The district court decision was in line with our precedent disallowing reduction from ADEA backpay awards of social security benefits, *Maxfield v. Sinclair International,* 766 F.2d 788, 793–94 (3d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986), and pension plan benefits, *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 217–18 (3d Cir.1984), *vacated and remanded on other grounds,* 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985).

2. ARCO argues that the court should have instructed the jury that it must find "by a preponderance of the evidence that the reasons given by ARCO for its termination of each plaintiff was [sic] in fact a pretext or cover-up for age discrimination." While such an instruction would ordinarily seem appropriate, in this case the district court specifically and repeatedly instructed the jury that it must find that age was a determinative factor in the plaintiffs' discharge. We have recently held that the plaintiff's burden of proving that the employer's reasons are pretextual merges with the plaintiff's ultimate burden to show age discrimination. *See Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393,

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

In an age discrimination case, in order to make out a prima facie case:

> a plaintiff must prove that he (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; (4) was replaced by someone outside the protected class, or ... by someone younger, or ... show otherwise that his discharge was because of his age.

*Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 565 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *Maxfield v. Sinclair International,* 766 F.2d 788, 792 (3d Cir. 1985). In a reduction in force situation, it is often impracticable to require a plaintiff whose job has been eliminated to show replacement. *See Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. 1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *see also Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 n. 13 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983) (nature of plaintiff's showing depends on circumstances of the case); Thompson, Houserman & Jordan, *Age Discrimination in Reduction-in-Force: The Metamorphosis of* McDonnell Douglas *Continues,* 8 Indus.Rel.L.Rev. 47, 57–58 (1986).

ARCO moved for a directed verdict at the close of plaintiffs' case, arguing that plaintiffs had not established a prima facie case. The district court denied this motion. Under our decision in *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d at 257, the issue of whether plaintiff established a prima facie case is subsumed on appeal into whether the plaintiff has sustained his or her ultimate burden of proving that age was a determinative factor in the plaintiff's termination.

In any event, the standards for reviewing the denial of a motion for a directed verdict and for a motion for judgment notwithstanding the verdict are not dissimilar. "We are required to 'review the record ... in the light most favorable to the non-moving party, ... and to affirm the judgment of the district court denying the motions unless the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief.'" *Black v. Stephens,* 662 F.2d 181, 187 (3d Cir.1981) (motion for judgment n.o. v.), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2022, 72 L.Ed.2d 475 (1982) (quoting *Dawson v. Chrysler Corp.,* 630 F.2d 950, 959 (3d Cir.1980)). *See Inventive Music Ltd. v. Cohen,* 617 F.2d 29, 31 (3d Cir.1980) (quoting *Fireman's Fund Insurance Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1178 (3d Cir.1976) (directed verdict), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977)).

Plaintiffs do not dispute that ARCO may have had a legitimate economic reason to reduce its force. ARCO's explanations for the termination of both Strayer and Dreyer appear plausible on paper. However, since we are not the factfinders we must determine whether a jury, hearing the evidence and observing the witnesses, could have concluded that Strayer's and Dreyer's age (both over 55) played a part in ARCO's selection of them for termination.

### 1. *Strayer*

■ Strayer was 56 at the time of her termination. She had worked at the Beaver Valley plant since 1963, for most of her tenure as a secretary. Since 1975, Strayer had been secretary to Robert Hines, the manager of the Financial Controls Department.

The legitimate, nondiscriminatory reason articulated by ARCO for terminating Strayer was that it had evaluated the per-

1396 (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). We cannot find that the court's failure to give the specific instruction was reversible error. *See* Fed.R. Civ.P. 61.

formance of its employees in connection with its reduction in force at the Beaver Valley plant and that Strayer was not only a below-average worker, but had the poorest performance of all clerical people at the plant. Hines, Strayer's immediate employer, testified to her low performance rating for 1980 and 1981, and there was documentary evidence showing her tardiness and absenteeism. ARCO claimed that during the reduction in force it had naturally sought to rid itself of its weakest personnel and that Strayer's abilities, not her age, had been the reason she had been forced into early retirement.

In Strayer's attempt to prove that ARCO's asserted reasons were pretextual, she showed that although she had worked for the company for 17 years, ARCO was able to produce only two years' evaluations of her as unsatisfactory. In fact, Hines rated Strayer's performance on the performance evaluations for 1978 and 1979 as satisfactory or better. In addition, Strayer showed that she had merit salary increases in every year from 1976 to 1981, and that her salary evaluations for 1978, 1980 and 1981 were favorable. Hines testified on cross-examination that he had not intended to terminate her for her performance prior to the reduction in force.

Moreover, there was evidence that ARCO was not under an economic necessity to terminate Strayer. A secretarial position remained open in the Financial Controls Department after Strayer's retirement, which was ultimately filled by an employee who was 32 years old.

Although Strayer's evidence that ARCO's reasons were pretextual is not overwhelming, a jury could reasonably have found from it that age was a determinative factor in her discharge.

### 2. Dreyer

Dreyer, who was 60 years old at the time her employment was terminated, was a computer operator in the Financial Controls Department. She had worked in the Beaver Valley plant since 1959. During the reorganization, Dreyer's job was eliminated and a new position was created which consolidated the duties of computer operator and data entry. ARCO officials testified that in deciding who should fill the new position, they had compared Dreyer's qualifications with those of another employee in the department, Marva Allen, who was the data entry supervisor, and they concluded that Allen was better qualified to fill the new position. Allen was 38 years old at the time.

Since ARCO articulated a legitimate reason for Dreyer's termination, Dreyer had the burden to prove that ARCO's asserted reason was pretextual as part of her continuing burden to prove that age was a determinative factor in ARCO's decision to terminate her employment.

Dreyer appears to have tried her case as to pretext on the theory that once her job was eliminated, she should have been given either the new job of remote job entry operator or another comparable job for which she was qualified. Dreyer challenged ARCO's evidence that she was less qualified than Allen. She attacked the evaluation process itself and produced evidence that her 1981 performance evaluation was made by Allen, her rival for the job.

Dreyer also stressed that she was not offered any other available position although there were jobs in the restructured Financial Controls Department for which she was qualified and which she had filled in the past. Two such jobs as payroll clerks were given to younger women, aged 27 and 40, who had little or no experience in them, and women significantly younger than Dreyer were given positions in data entry. Given this evidence, we cannot overturn the jury's verdict that age was a factor in Dreyer's termination.

In summary, both Dreyer and Strayer presented prima facie cases of age discrimination. ARCO presented evidence from which a jury could conclude that it retired the plaintiffs for reasons other than age. Much of the evidence before the jury required its evaluation of the credibility of

the witnesses. Plaintiffs introduced evidence to show pretext. The jury chose to accept plaintiffs' evidence that the asserted reasons were pretextual. We therefore affirm the district court's denial of ARCO's motion for judgment notwithstanding the verdict insofar as it sought to overturn the jury's finding that ARCO violated the ADEA in terminating both plaintiffs.

## B.

### Sufficiency of the Evidence to Support the Finding of Willfulness

█ The ADEA provides that "liquidated damages shall be payable only in cases of willful violations." 29 U.S.C. § 626(b). The statute defines liquidated damages by reference to the Fair Labor Standards Act as an amount equal to the losses sustained in lost wages and other benefits. 29 U.S.C. §§ 216(b), 626(b). The jury awarded liquidated damages to Dreyer. ARCO does not challenge the district court's instruction to the jury on the issue of willfulness. Instead it argues that the evidence was insufficient to meet the requisite standard of willfulness under the statute.

ARCO accurately notes that the courts have struggled with what constitutes a willful violation of the ADEA since enactment of the statute in 1968. Recently, some light has been shed on that issue by the Supreme Court's decision in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). In *Thurston,* the Court upheld the finding that the ADEA was violated by a policy of Trans World Airlines that allowed captains displaced for reasons other than age to "bump" less senior flight engineers but denied that "privilege of employment" to captains compelled by the collective bargaining agreement to vacate their positions when they reached 60. The Court held that TWA's transfer policy discriminated on its face against protected individuals on the basis of age.

On the other hand, the Court reversed the finding that TWA's violation was willful. The Court stressed that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." *Id.,* 105 S.Ct. at 624. The Court held that it was "acceptable" for the circuit court to have articulated a standard under which conduct was willful if "the employer ... knew or showed reckless disregard for ... whether its conduct was prohibited by the ADEA." *Id.* at 625–26. It held, however, that TWA's conduct was not a willful violation of the Act because it had adopted its plan only after conferring with its lawyers and the Union in an attempt to bring its retirement policy in line with the ADEA and to comply with its collective bargaining agreement. *Id.* at 626.

Many cases since *Thurston* have extracted from it the dual "knew or showed reckless disregard" test of willfulness to all claimed violations of the ADEA. However, there is a distinction between cases where the employer action that is claimed to violate the ADEA consists of adoption of a policy, as in *Thurston,* and cases where the employer action consists of a decision directed at an individual, such as termination or demotion. The "knew or reckless disregard" standard is particularly apt in the former situation, which is illustrated by *Whitfield v. City of Knoxville,* 756 F.2d 455 (6th Cir.1985). There the City involuntarily retired policemen and firemen, and defended against a claim for double damages on the ground that it believed in good faith that the ADEA could not constitutionally be applied to it. In such a situation, it is meaningful to inquire whether the employer knew that the action was in violation of the Act or whether it acted in reckless disregard of the prohibitions of the ADEA.

On the other hand, the "knew or reckless disregard" standard is not easily incorporated in cases alleging disparate treatment in a discrete employment situation. With respect to the "knew" prong of that test, as the Supreme Court recognized in *Thurston,* "As employers are required to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability." *Thurston,* 105 S.Ct. at 625. For

similar reasons, an inquiry into "reckless disregard", which is an alternate for "knew", would also not be meaningful to most disparate treatment claims. Because the "willful" inquiry arises only after the employer has been found to be liable under the ADEA, the factfinder would already have found that the employer used age as a "determinative" factor in the employment decision.

There is a danger that use of the "knew or reckless disregard" standard for a discrete employment decision that has been made on the basis of age would in effect allow the recovery of liquidated damages any time there was a violation of the Act. However, it is clear from *Thurston* that the Supreme Court rejected such an interpretation. *See id.* at 625 n. 22. The Court explicitly stated that "[b]oth the legislative history and the structure of the statute show that Congress intended a two-tiered liability scheme." *Id.* at 625. Therefore we must interpret the liquidated damages provision in a manner that effectuates this intent. *See Brock v. Richland Shoe Co.,* 799 F.2d 80 (3d Cir.1986).

Before the *Thurston* decision, this court held that "It is sufficient [for a willful violation of the ADEA] to prove that the company discharged the employee because of age and that the discharge was voluntary and not accidental, mistaken, or inadvertent." *Wehr v. Burroughs Corp.,* 619 F.2d 276, 283 (3d Cir.1980); *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 218 (3d Cir.1984), *vacated and remanded on other grounds,* 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985). Because *Thurston* makes clear that we must interpret the liquidated damages provisions in a way that would not permit "an award of double damages in almost every case," *Thurston,* 105 S.Ct. at 625, we must seek a standard for willfulness that distinguishes between a violation, which is almost always inten-

tional, and a willful violation, leading to double damages.[3]

The Court in *Thurston* suggested that this could be done by recognition that "Congress intended for liquidated damages to be punitive in nature." *Id.* at 624. We recognize that the general standard for punitive damages also encompasses an inquiry into "defendant's evil motive or his reckless indifference to the rights of others." *See* Restatement (Second) of Torts § 908(2) (1977). However, the *Thurston* Court disclaimed a need to show "evil motive or bad purpose" as an element of willfulness. *Thurston,* 105 S.Ct. at 624 n. 19. Hence, more assistance for our purposes may be afforded by other aspects of the punitive damages standard.

Section 908(1) of the Restatement (Second) of Torts provides that "[p]unitive damages are damages, other than compensatory or minimal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." The essence of punitive damages is that they may be awarded "for conduct that is *outrageous.*" Restatement (Second) of Torts § 908(2) (emphasis added).

When there has been intentional conduct we have inquired whether there was evidence of malice. *See Zippertubing v. Teleflex, Inc.,* 757 F.2d 1401, 1414 (3d Cir.1985). In a thoughtful discourse on the application of punitive damages in strict liability cases, our colleague Judge Becker stressed the need for evidence showing outrageous or comparable conduct. *See Acosta v. Honda Motor Co.,* 717 F.2d 828, 839–41 (3d Cir. 1983). In *Berroyer v. Hertz,* 672 F.2d 334, 340 (3d Cir.1982), we quoted the comments to section 908(2) of the Restatement (Second) of Torts which state in part, "since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these dam-

---

**3.** In *Brock v. Richland Shoe Co.,* 799 F.2d 80 (3d Cir.1986), a case construing "willfulness" for purposes of the statute of limitations under the FLSA, 29 U.S.C. § 255(a), we remanded to the district court for consideration of the *Thurston* standard. In the posture of that case on appeal,

we were not required to make a review of the record evidence of willfulness. In this case it is the necessity of such a review that has caused us to undertake the analysis set forth in the text regarding the application of the *Thurston* standard.

ages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime."

In sum, in some ADEA violations that are claimed to be willful, it will be sufficient to uphold a finding of willfulness through evidence that the defendant embarked on a policy or generally applicable course of conduct which it knew violated the ADEA or that it acted in reckless disregard of whether that conduct violated the Act. If an employer can show good faith and reasonable grounds for believing it was not in violation of the Act, a willfulness finding would be inappropriate. *See Thurston*, 105 S.Ct. at 625 n. 22.

■ Where an employer makes a decision such as termination of an employee because of age, the employer will or should have known that the conduct violated the Act. Nonetheless, in order that the liquidated damages be based on evidence that does not merely duplicate that needed for the compensatory damages, there must be some additional evidence of outrageous conduct. The Restatement suggests that in assessing punitive damages, "the trier of fact can properly consider [*inter alia*] the character of the defendant's act, [and] the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause." *See* Restatement (Second) of Torts § 908(2).

We cannot provide a litany of situations that would warrant a factfinder in finding willfulness. In some cases, evidence that the employer had previously violated the ADEA might warrant imposition of liquidated damages to effectuate the deterrent purpose underlying the willfulness provision. In other cases, termination of an employee at a time that would deprive him or her of an imminent pension might show the "outrageousness" of conduct that would warrant double damages. The cir-

cumstances of the violation itself may be so egregious, such as, for example, the systematic purging of older people from the employee staff, that double damages might be warranted to effectuate the punitive aspect of the willful section. In most cases, as is true of punitive damages generally, the appropriateness of the award will be dependent upon an ad hoc inquiry into the particular circumstances.

■ Turning to the evidence produced by Dreyer, we conclude that it falls short of the "minimum quantum" needed to support a finding of willfulness. ARCO was undeniably in the process of restructuring and reducing the employee personnel of the plant and the Financial Controls Department in which she worked. Dreyer does not contend that elimination of her job was a pretext to terminate her.

Dreyer emphasizes the evidence that ARCO did an "age analysis" of its work force, that the executive responsible for implementing the plan knew that Beaver Valley had an "old" work force,[4] and that after the reorganization, the Financial Controls Department had only 6 employees over the age of 50 while before it had 13 such employees. However, the undisputed evidence is that at least 5 employees in that department accepted the special early retirement program for which they were eligible. Dreyer does not suggest and did not produce evidence that such acceptance was anything but voluntary, and concedes in her brief that the Special Early Retirement Plan produced 6 of the 8 employees needed for reduction in the Financial Controls Department. Brief for Appellees at 12. Hence, the record will not support a conclusion that Dreyer's discharge was part of a pattern of conduct to involuntarily terminate personnel in the protected group.

Nor are there any other aggravating factors that would warrant punitive damages. Although Dreyer points to the evidence that ARCO failed to appoint her to

---

**4.** Dreyer's characterization of the evidence is not quite exact, since the plant manager's exact statement was, "Of course it was quite an old work force because it was an old plant and

interesting enough it was bimodal distribution, we had a group of older employees and younger employees and a bit of a void in between." App. at 485.

other available jobs filled by younger employees, such evidence shows, at most, a violation of the ADEA, but not the outrageous conduct needed to distinguish a violation from willful action. On the basis of the record evidence, we cannot sustain the award of liquidated damages to Dreyer.

### III.

For the reasons set forth above, the order of the district court denying ARCO's motion for judgment notwithstanding the verdict will be affirmed insofar as it upholds the jury's finding of liability to Strayer and Dreyer, and its assessment of damages. The order will be reversed insofar as it upholds the jury's finding that ARCO acted willfully in discharging the plaintiff Dreyer, and its assessment of double damages. Costs to be assessed in favor of appellees.