**Marvin WEIBLEY, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant.**

**Civ. A. No. 87–6873.**

United States District Court,
E.D. Pennsylvania.

March 8, 1988.

---

Catherine E. Walters, Lancaster, Pa., for plaintiff.

David Wolf, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Defendant Westinghouse Electric Corporation has moved to dismiss plaintiff's federal claim (Count I) under the Age Discrimination in Employment Act, (ADEA, 29 U.S. C. §§ 626(b), (c), (e)), as untimely filed and his pendent state law claims (Counts II—IV) based upon federal preemption of the claims by the Employee Retirement Income Security Act of 1974 (ERISA, 29 U.S.C. § 1001, et seq.).

Plaintiff alleges that he had been employed by Westinghouse for 44 years when, in August, 1984, at age 62, he was completing a seven year assignment in Spain. At that time, plaintiff was allegedly informed by his supervisor that, contrary to the company's policy with respect to workers returning to the United States after overseas assignments, he would have to retire upon his return. When plaintiff continued to seek other positions within the company and to indicate that he did not wish to retire, his supervisor informed him that no other positions were available and that he faced being laid off if he did not retire.

Plaintiff further alleges that he was aware of various available positions for which he was qualified but which were filled by younger employees.

During September and October, 1984, plaintiff was counselled regarding early retirement by a Westinghouse Benefits Administrator who explained his pension benefit options and calculated his expected monthly payment based upon the option he selected. He was given a copy of her calculations, which included a monthly early retirement incentive bonus, to help him make his decision. The Benefits Administrator also allegedly told him that he would be laid off if he did not choose retirement.

After requesting verification of the calculations from the Benefits Administrator on several occasions and from her supervisor and the personnel manager and being assured that the calculations were accurate, plaintiff ultimately decided to retire. His first benefit check, however, was some $400 less than he expected based upon the calculations he had been given.

Upon inquiry, plaintiff was informed by the company's Manager of Pension Administration that the estimate with which he was provided before retirement was erroneous and that the amount of his check was the correct amount due him.

In May, 1985, plaintiff filed an EEOC complaint and was issued a right to sue letter on September 30, 1986. This action was filed on October 28, 1987.

## I  Statute of Limitations

In support of its motion to dismiss Count I of the complaint, defendant contends that plaintiff has not stated a claim for a willful violation of ADEA and hence is subject to a two year statute of limitations. Since the latest date that the plaintiff's cause of action could have accrued is November 1, 1984, the date his retirement took effect, and the complaint was not filed until October, 1987, defendant contends that the ADEA claim is now barred.

Plaintiff responds that under *Dreyer v. Arco,* 801 F.2d 651 (3d Cir.1986), in which the Court of Appeals applied the willfulness analysis and standards set forth by the Supreme Court in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), he has sufficiently alleged a willful violation of the ADEA and is thus entitled to the benefit of the three year statute of limitations.

The thrust of the *Thurston* and *Dreyer* cases is that allegations of a willful violation of the ADEA must amount to something more than what is necessary to state a *prima facie* case under the statute. As the Court of Appeals for the Third Circuit explained in *Brock v. Richland,* 799 F.2d 80, 82 (3d Cir.1986), another case decided after *Thurston,* "A willful act requires a deliberate effort, more than mere negligence. *Webster's New Collegiate Dictionary* 1331 (1979) defines 'willful' to mean 'done deliberately: intentional.'" That definition, however, must be read in light of the court's conclusion in *Dreyer* that where a discrete employment decision is involved, a showing of outrageous conduct on the part of the employer is required to sustain a finding of willfulness.

At this stage of the proceedings, the Court must determine whether the allegations, if proven at trial, would support a jury finding of willfulness. Plaintiff has alleged that, in his case, the company refused to implement its usual repatriation policy and filled positions for which he was qualified with younger employees. Those allegations are sufficient to state a *prima facie* case under the ADEA but would not support the finding of a willful violation

under the *Thurston* and *Dreyer* standards. Plaintiff also alleges, however, that he was induced to choose retirement rather than risk lay-off by the company's deliberate misrepresentation of his monthly pension benefit. Thus, it appears from the allegations of the complaint that the defendant wished to avoid taking overt action which might result in an obvious violation of the ADEA by laying off a worker in the protected class. Instead, it sought to make the termination of the employment relationship a voluntary act on the part of the employee by orchestrating a course of conduct calculated to deceive him into accepting retirement. The Court concludes that such a course, if established at trial, is sufficiently outrageous to support a finding of willfulness. Consequently, the allegations of the complaint are sufficient to support application of the three year statute of limitations.

Alternatively, defendant contends that even if the Court concludes that the plaintiff has stated a claim for a willful violation of the statute, the claim actually accrued in August, 1984 when plaintiff was first informed that he would have to retire upon his return from Spain. If that is accurate, this case, filed in October, 1987, is still barred by the statute of limitations. In support of this argument, defendant relies upon *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

In *Ricks* the Supreme Court explained that the statute of limitations begins to run when the discriminatory act occurs, not when its consequences become manifest. It is necessary, therefore, to identify the nature of the claim. Only then can the court separate the discriminatory act from the natural consequences flowing therefrom. That principle as enunciated in *Ricks*, however, does not conflict with the

notion that, "[A] cause of action could not accrue until the discrimination manifested itself." *E.E.O.C. v. Westinghouse*, 725 F.2d 211, 219 (3d Cir.1983). In other words, the plaintiff must know that he has been the victim of discrimination before his claim can accrue and the statute of limitations begin to run against him, regardless of when the consequences are felt.

In *Ricks*, the discriminatory act alleged was the denial of tenure to a college professor. In that instance, the Supreme Court held that the statute of limitations began to run when the plaintiff knew of the decision. In contrast, the Court of Appeals for the Third Circuit held in *E.E.O. C. v. Westinghouse*, that even where a policy, alleged to be discriminatory, has been announced to employees, the statute of limitations does not begin to run on any specific claim until the announced policy has actually been applied to that employee. Thus, although employees 55 years of age and older were told that they would have to retire rather than choose among the various other benefits offered to younger employees upon the occasion of a plant closing, those employees potentially affected were not obliged to file suit immediately. Instead, their claims did not accrue until they were actually forced to retire as a result of a plant closing and the subsequent application of the policy to them. It was only then that the statute of limitations began to run on those claims.

■ In this case, the plaintiff is actually alleging that two discriminatory actions were committed against him, *i.e.*, the company's refusal to place him in an equivalent position when he returned from his assignment in Spain and its misrepresentation of the monthly pension benefit he would receive if he chose early retirement. Plaintiff's present claim for relief, however, is based only upon the latter act.[1] He does not seek reinstatement to his employment.

---

**1.** Originally, plaintiff's complaint before the E.E.O.C. concerned only the company's insistence that he retire upon his return from Spain and its refusal to assign him to or even consider him for another position. (See, Complaint, Doc. # 1, Exh. E–3). Later, however, the E.E.O.C. charge was amended by letter of March 12, 1986 to include the company's failure to pay the allegedly promised amount of monthly pension

benefits. (See, Brief in Opposition to Defendant's Motion to Dismiss, Doc. # 5, Exh. B).

It is not surprising that the present claim concerns only the misrepresentation since the plaintiff's decision to retire, allegedly based upon the pension benefit calculations, obviated the need for the company to follow through on

Rather, he seeks only to obtain the amount of the monthly pension benefit he alleges was promised to him in consideration for his decision to accede to the company's wish that he retire early.

While it is true that plaintiff was first informed of the company's intention not to offer him another position in August, 1984, that act, even if discriminatory, was not the immediate cause of his harm. He alleges that he ultimately decided to retire because of the monthly pension benefit he expected to receive. He could not possibly have known in August, 1984, that the company would attempt to avoid carrying out its announced intention to lay him off and instead induce him to retire by deliberate miscalculation of his expected monthly pension. Thus, he could not have known of the allegedly unlawful and discriminatory acts directed toward him until he received his first pension check, at the earliest.[2]

Characterizing the claim as one for inducing voluntary termination of employment by deceptive practices, it is entirely consistent with *Ricks* to conclude that the claim did not accrue before November 1, 1984. Consequently, this action was timely filed under the three year statute of limitations.

### II  Preemption

■ Defendant contends that plaintiff's pendent claims must be dismissed because of the broad preemption provision in ERISA. Where a state law claim might create the need to adjust an employer's pension plan administrative scheme, the claim would be preempted. See, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. ——, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). That situation is not presented by these state law claims, however. Plaintiff is not seeking relief from the pension plan, but from the company itself. Indeed, as the Court construes the complaint, the exhibits attached to it and the exhibits attached to plaintiff's memorandum in opposition to the motion to dismiss, there are no allegations made against the pension plan or any employees connected to it. Rather, plaintiff complains that employees in the personnel department misled him as to the amount of monthly pension benefits he was due under the company's pension plan. Plaintiff does not contend that the plan administrator's calculations are erroneous or misled him in any way. At most, plaintiff is alleging that the company used the existence of the pension plan and the fact that he was unquestionably entitled to some benefits under it to further its allegedly discriminatory purposes.

If this Court were to apply the preemption provision to the pendent claims here, we would create the potential for great and unredressable harm. It does not appear from the pleadings and supporting documents that there has been any ERISA violation. Consequently, there is no remedy for any harm under the ERISA administrative scheme. If we now allow a company to avoid the consequences of its alleged misrepresentations simply because they were made in connection with estimating pension benefits, we would leave anyone so deceived without a remedy.

The situation presented here does not differ in substance from an outright promise to pay an older employee a sum of money to retire early and then fail to do so. We conclude that plaintiff's pendent claims are not preempted by ERISA.

Having concluded that the plaintiff's federal claim is not barred by the statute of limitations and that his state claims are not preempted, the motion to dismiss will be denied in its entirety.

■

---

its layoff threat or find another position for the plaintiff within the company.

2.  Indeed, while we cannot agree with plaintiff's contention that each check received for a lower amount than was allegedly promised constitutes a new act of discrimination, it is arguable that plaintiff could not have known that the erroneous amount calculated by the personnel department was part of a scheme to induce him to retire, as he now alleges, until he was informed by the Pension Administration Office that the worksheet supplied by the Personnel department rather than the amount of the check was wrong.