**William CLARK**

v.

**FRANCE COMPRESSOR PRODUCTS, DIVISION OF GARLOCK, INC.; Garlock, Inc.; and Colt Industries, Inc.**

**Civ. A. No. 87–1858.**

United States District Court, E.D. Pennsylvania.

Aug. 19, 1988.

George P. Wood, Norristown, Pa., for plaintiff.

Patrick W. Ritchey, Pittsburgh, Pa., J. Thomas Morris, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Plaintiff, William Clark, has alleged in his complaint: 1) a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1985); 2) a violation of the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1985); and, 3) a state law claim of intentional infliction of emotional distress. Furthermore, plaintiff has requested liquidated damages, punitive damages and damages for pain and suffering and emotional distress. Defendants, France Compressor Products (France), Garlock Inc. (Garlock), and Colt Industries Inc. (Colt) have moved, pursuant to Fed.R.Civ. P. 56(b), for summary judgment on plaintiff's intentional infliction of emotional distress claim, on his ERISA claim, on his request for liquidated damages, punitive damages and damages for pain and suffering and emotional distress, and on all of plaintiff's claims against Colt.

Rule 56 instructs a district court to enter summary judgment when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the district court is to view all inferences from the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Plaintiff alleges he was terminated by defendants, on April 10, 1985. Complaint at ¶ 11. At the time he was terminated, plaintiff was sixty-three (63) years old and had worked for the defendants since 1954. *Id.* Plaintiff alleges that he was terminated because "defendants, by their agents and employees, were instructed and ordered to reduce costs by terminating older employees between the ages of 40 and 70 who were receiving high salaries and costing defendants higher pension contribu-

tions." *Id.* at ¶ 17. Plaintiff further alleges that his age and "length of service was a determining factor in defendants' decision to reduce costs." *Id.* at ¶ 27. Finally, plaintiff alleges that defendants "knew or should have known that their intentional conduct in causing the discriminatory termination based on ... age would cause him and did cause him great emotional distress and harm." *Id.* at ¶ 31. I turn first to that part of defendants' motion requesting summary judgment on plaintiff's claim of intentional infliction of emotional distress.

## I. *Plaintiff's Intentional Infliction of Emotional Distress Claim.*

■ Defendants argue that plaintiff "[a]s a matter of law ... has failed to allege facts sufficient to establish a claim of intentional infliction of emotional distress." Memorandum in Support of Defendants' Motion for Partial Summary Judgment at 4. Defendants contend that "[t]he alleged fact [that plaintiff] was terminated from employment because of his age simply is not the kind of [outrageous] conduct that can support a claim for intentional infliction of emotional distress as a matter of Pennsylvania law." *Id.* at 9–10.

Plaintiff in response to this argument alleges that defendants intentionally tried to make his job unbearable for the purpose of driving him out of his job and contends that this type of harassment constitutes outrageous conduct. In support of this allegation, plaintiff submitted the affidavit of his supervisor, Mr. Edward Dickerson. Mr. Dickerson averred *inter alia:*

3. From approximately January, 1971 until Mr. William Clark was terminated, I was his supervisor ...

4. During the entire time that I supervised Mr. Clark's employment, I found Mr. Clark's performance to be an extremely capable employee

\* \* \* \* \* \*

6. ... I was instructed ... to place William Clark on a double disk operation. I complied to [sic] the instructions and *was told to ride his ass and stay right on top of him to make it uncomfortable for him to stay with the company. It*

*was known that the grinder that William was positioned on was in extremely poor condition and production could not be met. ... I was told to continuously keep the heat on in an attempt to make Bill's position unbearable ... I* was summoned to the Vice–President's office on or about the first week of January, 1985, and he told me Bill was going to be demoted to a lower grade level and that we were *to still stay on top of him in order to make Bill accept retirement.*

(emphasis added)

Under Pennsylvania law, the tort of intentional infliction of emotional distress consists of the following elements: "(1) *the conduct must be extreme and outrageous;* (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.1979) (en banc) (emphasis added). Before submitting a claim for intentional infliction of emotional distress to a jury the "court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Id.* at 1274. Outrageous conduct is conduct which is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Bangert v. Harris,* 553 F.Supp. 235, 238 (M.D.Pa.1982) (quoting Restatement (Second) of Torts, § 46, comment d).

I have reviewed and considered the acts alleged to have been perpetrated by the defendants towards the plaintiff. I find that forcing an employee to use a machine that was in poor condition and "riding" and "keeping the heat" on an employee in an attempt to make him retire is not conduct which may reasonably be regarded as so extreme and outrageous as to permit recovery. Such conduct is not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. I

find as a matter of law that there is not sufficient evidence for reasonable persons to find extreme or outrageous conduct. Therefore, in light of these findings, I will grant that part of defendants' motion for summary judgment on plaintiff's claim of intentional infliction of emotional distress. I turn now to that part of defendants' motion for summary judgment on plaintiff's ERISA claim.

## II. *Plaintiff's ERISA Claim.*

■ In count II of his complaint plaintiff alleges that his "length of service was a determining factor in defendants' decision to 'reduce costs', with the design and purpose of his early termination prior to normal retirement age to deny Mr. Clark his full pension benefits in violation of ... (ERISA) 29 U.S.C. § 1001 *et seq.*" Complaint at ¶ 27. Defendants argue that this claim arises under section 510 of ERISA, 29 U.S.C. § 1140 (1985) and that it should be summarily dismissed since plaintiff has proffered no evidence of specific intent on the part of defendants to violate ERISA.[1]

"To establish a *prima facie* case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) *taken for the purpose of interfering* (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.), *cert. denied* — U.S. ——, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (emphasis added). The Third Circuit Court of Appeals made it abundantly clear in *Gavalik* that a plaintiff must show that a defendant had the "specific intent" to violate ERISA in order to recover under section 510 of ERISA. *Id.* at 851. Furthermore, a nonmoving party on a motion for summary judgment, who will bear the burden of proof at trial on a dispositive issue is "require[d] ... to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' *designate 'specific facts showing that there is a genuine issue for trial.'*" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added).

The discovery deadline in this action was on April 18, 1988. Defendants filed their motion for summary judgment on May 9, 1988. As noted above, defendants in this summary judgment motion contend that plaintiff has no evidence that defendants specifically intended to violate ERISA. Plaintiff in response to this contention fails to designate *any* facts showing specific intent.[2] Since plaintiff has the burden of proof on this issue at trial, I will grant defendants' motion for summary judgment.

## III. *Plaintiff's Claims for Punitive Damages and Damages for Pain and Suffering and Emotional Distress.*

In his complaint plaintiff requests "damages for pain and suffering and for emotional distress." Complaint at 9. Defendants contend that "punitive damages and damages for pain and suffering and emotional distress ... as a matter of well-settled law ... are not available under the ADEA or ERISA." Memorandum in Support of Defendants' Motion for Partial Summary Judgment at 11. Plaintiff concedes that he "makes no claim for pain and suffering and emotional distress under the ADEA and ERISA" and that these damages are only in regard to the intentional

---

1. Defendants assume that plaintiff's claim arises under section 510 of ERISA. Plaintiff, however, does not state in his complaint, pretrial memorandum, or any other submission to this court, under what section of ERISA his claim arises. In light of the nature of the factual allegations making up plaintiff's claim and the fact that plaintiff did not object to defendants' characterization of his ERISA claim as one arising under section 510, I will consider plaintiff's ERISA claim as one made under section 510 of that statute.

2. Plaintiff merely states that *"[i]f the defendant's intent* was to reduce cost of pensions by terminating senior employees, such action would be in violation of ERISA."* Plaintiff's Memorandum of Law in Opposition to Motion for Partial Summary Judgment at 6 (emphasis added). Plaintiff also argues that Magistrate Naythons denied his motion to compel discovery of documents regarding defendants' pension plan. *Id.* This argument is meritless in light of plaintiff's burden on summary judgment and because plaintiff failed to appeal the Magistrate's ruling.

infliction of emotional distress claim. Plaintiff's Memorandum of Law in Opposition to Motion for Partial Summary Judgment at 5. Therefore, I find the defendants' motion for summary judgment on this issue moot.

In light of plaintiff's response to their summary judgment motion, defendants request a "sanction" against the plaintiff under Fed.R.Civ.P. 11, since plaintiff asked for such damages in his complaint under a caption of "Damages–All Counts". Defendants' Brief in Reply to Plaintiff's Memorandum of Law at 7 n. 6. *See* Complaint at 8. Defendants specifically request "their reasonable expenses, including attorneys' fees, incurred in responding to plaintiff's claim for extra-contractual damages." *Id.* at 7 n. 6.

> In pertinent part Rule 11 provides that: The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

While plaintiff's complaint is vague, confusing, and sloppily drafted, I do not believe that his slipshod request for damages was "interposed for any improper purpose" in violation of Rule 11. Therefore, defendants request for a sanction is denied.

IV. *Plaintiff's Claim for Liquidated Damages under the ADEA.*

■ In count I of his complaint plaintiff alleges that his termination was done "intentionally and willfully and with the knowledge and intent to damage and injure plaintiff." Complaint at ¶ 25. Defendants argue that "there are absolutely no facts in the record to support the finding of a willful violation that is required before liquidated damages can be awarded." Memo-

randum in Support of Defendants' Motion for Partial Summary Judgment at 16. Plaintiff responds by again relying on the affidavit of Mr. Dickerson, who stated, as noted above, that he was told to "ride [Clark's] ass and stay on top of him to make it uncomfortable for him to stay with the company." Affidavit of Dickerson at 1.

The ADEA, 29 U.S.C. § 626(b), provides that "liquidated damages shall be payable only in cases of willful violations." There are two standards for determining whether liquidated damages are recoverable under the ADEA. *Anastasio v. Schering Corp.*, 838 F.2d 701, 707 (3d Cir.1988). Where the employer adopts a policy that is claimed to violate the ADEA, the use of a "knew or showed reckless disregard" for whether its conduct violated the ADEA standard is appropriate. *Id.* But, in cases involving "termination or other action directed at an employee, a finding of willfulness and imposition of liquidated damages requires evidence of conduct that is *outrageous* rather than merely duplicative of that needed for a finding that the employer has violated the ADEA." *Id.* (citing *Dreyer v. ARCO Chemical Co.*, 801 F.2d 651 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987)) (emphasis added). Since plaintiff alleges that he was terminated by the defendants in violation of the ADEA, the latter of the above two standards governs the present case.

In *Dreyer*, a case dealing with the termination of an employee, the court looked toward Section 908 of the Restatement (Second) of Torts for guidance in determining outrageousness in awarding liquidated damages. 801 F.2d at 658. The Restatement holds that "the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." Restatement (Second) of Torts § 908(2). The *Dreyer* court further stated that the termination of an employee at a time that would deprive him of a pension might show that liquidated damages are warranted. 801 F.2d at 658. Yet, in most cases the appropriateness of liqui-

dated damages "will depend upon an ad hoc inquiry." *Id.*[3]

In the present case, plaintiff has alleged and produced evidence that he suffered stress and loss of sleep after his termination. *See* Affidavit of William Clark at 1. Further, while defendants did not act with the specific intent of depriving plaintiff of his full pension benefits, he was nonetheless deprived of them. Complaint at ¶ 27. Finally, plaintiff has produced evidence of harassment. *See* Affidavit of Dickerson at 1.

I find that defendants have not established as a matter of law that there are no facts in the record to support the finding of a willful violation of the ADEA. Furthermore, a genuine issue exists as to whether defendants' conduct was outrageous so as to warrant the awarding of liquidated damages.

For the above reasons, that part of defendants' motion requesting summary judgment on the liquidated damages claim will be denied.

## V. *Defendant Colt*

In his complaint, plaintiff asserted all of the aforementioned claims against Colt as well as against France and Garlock. Colt contends that it is an improper party and requests summary judgment on all of plaintiff's claims. Memorandum in Support of Defendants' Motion for Partial Summary Judgment at 17.

Plaintiff concedes that he "cannot maintain his lawwsuits [sic] against them [Colt] on the ADEA claim." Plaintiff's Memorandum of Law in Opposition to Motion for Partial Summary Judgment at 9. Since I have dismissed plaintiff's two other claims, ERISA and intentional infliction of emotional distress, I will grant Colt's motion for summary judgment.

An order follows.

## ORDER

AND NOW, this 19th day of August, 1988, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. That part of defendants France Compressor Products (France) Garlock Inc. (Garlock) and Colt Industries, Inc.'s (Colt) motion requesting summary judgment on plaintiff's intentional infliction of emotional distress claim is GRANTED; and,

2. That part of defendants France, Garlock, and Colt's motion requesting summary judgment on plaintiff's Employee Retirement and Income Security Act, 29 U.S.C. § 1001 *et seq.* (1985), claim is GRANTED; and,

3. That part of defendants France, Garlock, and Colt's motion requesting summary judgment on plaintiff's claims for punitive damages and damages for pain and suffering and emotional distress is DISMISSED as MOOT; and,

4. That part of defendants France, Garlock, and Colt's motion requesting summary judgment on plaintiff's claim for liquidated damages under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1985), is DENIED; and,

5. That part of defendants France, Garlock, and Colt's motion requesting summary judgment on behalf of Colt is GRANTED.

---

3. This test for determining "outrageousness" is clearly different than the test for outrageousness in the Pennsylvania tort of intentional infliction of emotional distress.