Glenn **UFFELMAN**, Plaintiff–Appellee,

v.

**LONE STAR STEEL CO.,**
Defendant–Appellant.

No. 88–2326.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1989.

Michael P. Maslanka and David M. Ellis, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for defendant-appellant.

Larry Daves, Daves, Hahn & Levy, Tyler, Tex., for plaintiff-appellee.

Before REAVLEY, HIGGINBOTHAM and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:

Defendant Lone Star Steel Co. appeals from a judgment based upon a jury verdict awarding back pay and liquidated damages to a discharged employee for a claim under the Age Discrimination in Employment Act (ADEA). 29 U.S.C. §§ 621–634. We affirm.

## I. Background

Lone Star Steel Co., a manufacturer of tubular products for use in the oil and gas industry, hired Glenn Uffelman as a staff engineer in 1975 when he was fifty-one years of age. Uffelman, who came to Lone Star with a degree in engineering and over twenty years experience as a production engineer, was assigned to the construction engineering section of the engineering department. He performed a variety of services there, including among other things supervising the activities of outside contractors and working as an expediter for various engineering projects.

In 1982, William Ulevich was hired to manage the engineering department at Lone Star. Shortly thereafter, the price of oil began declining, together with the need for drilling equipment and Lone Star's products. Ulevich decided that the engineering department would have to be reorganized and jobs terminated. On December 15, 1983, Ulevich submitted his proposal for the reorganization to Lone Star's human resources department. This proposal called for the elimination of the construction engineering section and the reorganization of the remaining engineering sections into four subdepartments. Although Ulevich did not develop objective job descriptions, he determined in general what functions engineering would continue to perform and how many employees would be needed to perform those functions. Ulevich then matched employees to the remaining jobs and presented the entire plan to Robert Frane, the director of human resources.

On May 3, 1984, Uffelman, along with nine other Lone Star employees, was discharged. Of the ten who were terminated, nine were over the age of forty and thus within the ADEA's protected group.[1] After complying with the administrative steps through the Equal Employment Opportunity Commission, Uffelman brought this suit against Lone Star pursuant to the ADEA, alleging that his discharge was unlawful in that his age was a determinative factor in the decision to let him go. Lone Star claimed that Uffelman's discharge was motivated by the company's declining business and Uffelman's unsatisfactory work performance. The jury, finding both that Lone Star discharged Uffelman because of his age and that it did so willfully, awarded back pay in the amount of $75,910.25. The district court, denying Lone Star's motions for judgment n.o.v. and for a new trial, doubled this amount in its entry of judgment based on the jury's finding of willfulness.[2] See 29 U.S.C. § 626(b).

Lone Star appeals on the following grounds: (1) that the evidence was insufficient to support the jury's finding of intent to discriminate; (2) that the evidence was insufficient to support the jury's finding that Lone Star willfully violated the ADEA; and (3) that Uffelman's back pay should have been tolled from January 1985 to the present since the evidence established that Uffelman voluntarily withdrew from the

---

1. 29 U.S.C. § 631(a) provides that "[t]he prohibitions in this chapter ... shall be limited to individuals who are at least 40 years."

2. Uffelman also brought an action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The district court's original judgment in this case, entered on April 6, 1988, did not dispose of the ERISA claim. Therefore, Lone Star's notice of appeal, filed on April 7, was not from a final judgment. On October 20, the district court, pursuant to Fed.R.Civ.P. 54(b), certified the April 6 judgment as a final judgment and Lone Star filed a new notice of appeal.

labor market, thereby willfully failing to mitigate his damages.

## II. Sufficiency of the Evidence

In reviewing the denial of a motion for judgment n.o.v., this court's task is to determine whether the record contains evidence upon which a reasonable trier of fact could conclude as the jury did, keeping in mind that "it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir.1969) (en banc).

### A. *Age Discrimination*

■ The plaintiff's prima facie case of age discrimination in a reduction in force situation consists of: (1) satisfying the ADEA's standing requirements that he is within the protected group and he has been adversely affected by the employer's decisions; (2) showing that he was qualified to assume another position at the time of the discharge; and (3) producing evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 642 (5th Cir.1985). The employee may meet this burden by proving that younger employees, or those outside the protected group, were more favorably treated. *Id.* at 639. If the defendant articulates legitimate reasons for its actions, the plaintiff bears the burden of demonstrating that those reasons were pretextual. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ Lone Star claimed that Uffelman was terminated because of the company's declining business and Uffelman's substandard work performance. The parties presented conflicting evidence regarding Uffelman's work record, and Uffelman's response to the workforce reduction explanation was that Lone Star resolved admitted financial problems by terminating older employees in a discriminatory fashion. We conclude that the jury was presented with evidence from which it was entitled to find that Lone Star did discriminate because of age and that its proffered rationale for Uffelman's termination was pretextual.

Contradictory stories arose regarding Uffelman's performance on the job. Lone Star claimed that Uffelman's performance had been unsatisfactory for quite some time before he finally was discharged. It pointed out that Uffelman's annual performance rating reached its lowest point in 1980 and that in 1983 he was placed on probation at the request of his supervisor, Frank Rice.[3] Uffelman offered evidence to show, however, that some of the reprimands on which his ratings were based were ill-founded. The conflict in the evidence surrounding Rice's action may have been particularly significant to the jury. Ulevich testified that Rice wanted to discharge Uffelman and came to Ulevich with the request that this be done. Rice testified that he made no such request, that he never intended to see Uffelman—who did excellent work—discharged, and that he recommended an upgrade of Uffelman's evaluation which Ulevich refused. Other co-workers testified that he had done good work for Lone Star over the years and that the quality of his work compared well with that of other similarly situated engineers. A supervisor in another engineering section requested that Uffelman be transferred to his group to work on a special project. That request, too, was denied by Ulevich. From this evidence, the jury could have concluded that Uffelman was well qualified to perform his job and that Lone Star's articulated reason for firing him was simply pretextual.

The reduction in force, itself admittedly justified, did not explain Ulevich's decision to discharge Uffelman while retaining sev-

---

**3.** Lone Star rates an employee's performance according to a five-point scale. One represents unsatisfactory performance. Two indicates that the employee met minimum performance requirements. Three represents satisfactory performance. Four indicates that the employee exceeded requirements. Five represents outstanding performance. Uffelman received his lowest rating, a 2.7, in 1980.

eral younger, less experienced engineers who continued to perform tasks that Uffelman was qualified to do. This was Uffelman's evidence which the jury accepted. Two engineers, Ogg and Schlossel, both under the age of forty, were retained and transferred to positions which Uffelman apparently convinced the jury he was qualified to fill. Other engineers, within ADEA's protection, were also retained and Uffelman's evidence compared his qualifications favorably with theirs. Lone Star contends that no inference of age discrimination can be drawn from the preferred treatment of engineers who were themselves at an age protected by the ADEA. We disagree. "We have never demanded rigid adherence to the requirement that the plaintiff establish that he was treated unfavorably as compared with people outside of the protected class—*i.e.*, under age forty." *Thornbrough*, 760 F.2d at 643 n. 14. As we noted in *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980),

> because the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account. Because of the value of experience rarely are sixty-year-olds replaced by those under forty. The replacement process is more subtle but just as injurious to the worker who has been discharged. That the person is replaced by a person ten years younger rather than twenty years does not diminish the discrimination; the subtlety only tends to disguise it.

The evidence at trial indicated that one of the main purposes of the reorganization was to cut costs. Lone Star saved money in terminating Uffelman's salary and benefits, and by discharging Uffelman nine months short of the time at which his pension was to have vested, and thereby avoiding the expense of retirement pay, the company realized an additional savings. Uffelman established that other older employees were discharged at the same time that he was. Three out of five engineers aged sixty or older were let go, including Frank Rice, the oldest and highest paid engineer

in construction engineering, while only one out of twenty-four employees under the age of forty was terminated. The jury was entitled to infer from the evidence that, by retaining younger, lesser paid employees who were not nearly so close to retirement, Lone Star was attempting to further a plan to reduce the average age and pay of its employees.

Uffelman also presented evidence tending to show that younger employees were given differential treatment and were subjected to less scrutiny than the older employees. For example, some of the younger employees left the grounds for late lunches quite frequently. On one occasion when Uffelman took a late lunch, he was reprimanded and written up. Younger employees were offered the chance to take computer training courses while Uffelman was not. This court has held that this sort of treatment is some evidence of discriminatory intent. *See Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 209 (5th Cir.1986).

The evidence was sufficient to support the jury's finding that age was a determinative factor in Lone Star's decision to terminate Uffelman.

### B. *Willfulness*

The more difficult issue presented in this appeal concerns the issue of whether Lone Star's discrimination was willful within the meaning of the statute. According to *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), a violation of the ADEA is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128–29, 105 S.Ct. at 625–26. In *McLaughlin v. Richland Shoe Co.*, —— U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court made clear that a finding of unreasonableness will not suffice as proof of knowing or reckless disregard:

> If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful under either petitioner's test or under the standard we set forth. If an employer acts unreasonably,

but not recklessly, in determining its legal obligation, then, although its action would be considered willful under the petitioner's test, it should not be so considered under *Thurston* or the identical standard we approve today.

108 S.Ct. at 1682 n. 13. A finding of willfulness is of particular importance since it (1) entitles a plaintiff to a doubling of any back pay award, *see* 29 U.S.C. § 626(b), and (2) extends the statute of limitations from two to three years, *see* 29 U.S.C. § 626(e).[4]

■ Lone Star contends that it introduced overwhelming, uncontroverted evidence that it acted reasonably and far from willfully in seeking to ensure that its reorganization plan would comport with the law, including the fact that it conducted an independent evaluation of its plan and both sought and received approval of the plan from Lone Star's corporate counsel. Lone Star cites *Halferty v. Pulse Drug Co.*, 826 F.2d 2, 3–4 (5th Cir.1987), to stand for the proposition that the fact that an employer seeks out legal advice before implementing a program like the one at issue here precludes a finding of willfulness. While we agree that an employer who acts reasonably and in good faith in attempting to determine whether its plan will violate the law does not act willfully, it does not follow that seeking legal advice *ipso facto* establishes the appropriate intent. In reaching a determination on the issue of an employer's good faith, the jury is entitled to weigh the credibility of witnesses and to disbelieve self-serving testimony. *Guthrie*, 803 F.2d at 207.

■ Lone Star presented the testimony of its manager of human resources, Mr. Frane, who testified that the reorganization plan designed by Ulevich underwent a three-tiered evaluation process prior to its implementation: (1) a series of meetings with Ulevich to determine the factual basis for the reorganization and the reasons that certain employees were being retained while others were being terminated; (2) an independent evaluation of the reorganiza-

tion by E.G. Thompson, the manager of equal employment opportunity; and (3) an evaluation of the reorganization by Lone Star's corporate counsel, William Osborn. Neither party called Thompson or Osborn to corroborate or dispute this testimony, but Uffelman did call Ulevich, who testified that he never discussed the age factor inherent in the reorganization with anyone.

Lone Star argues that the fact that Frane did not discuss the impact of the reorganization on older employees with Ulevich does not necessarily mean that such an analysis was never made. We agree. Indeed, under this record the jury may have concluded that the analysis was that of Ulevich and that his preferences and prejudices determined the decision. The jury was free to make reasonable inferences from this evidence of the discussion with Frane. A reasonable juror might have concluded, for example, that the failure to discuss with Ulevich the reorganization plan's age impact, in what were by Lone Star's own admission comprehensive meetings, represented a careless disregard or intentional avoidance of that aspect of the plan. Furthermore, the jury was entitled to disbelieve Frane's self-serving testimony that he and other Lone Star officials carefully reviewed the reorganization plan for compliance with the law, especially in light of the fact that neither Thompson nor Osborn was called upon to testify regarding their roles in the evaluation process.

There is another reason to question Lone Star's contention that it acted in good faith in evaluating the legality of the reorganization plan. Ulevich testified that he made his decisions regarding which engineers would remain following the reduction in force without developing objective job descriptions to guide him. Human resources then approved the plan without developing job descriptions as called for by the plan. Although Lone Star claimed that this was not out of the ordinary, the jury was entitled to conclude from this evidence that Lone Star set up the evaluation process merely to create the appearance that it had acted objectively and in good faith. Also,

---

**4.** Because Uffelman filed this suit over two years after the alleged discriminatory firing, his entire claim would have been barred had the jury not found that Lone Star's violation of the ADEA was willful.

there was some evidence that Lone Star failed to comply with its own policies in evaluating the performance of its employees prior to the reduction in force. Ulevich relied on those same evaluations in deciding which employees would be terminated.

The jury was instructed that in order to find that Lone Star's conduct in violating the ADEA was willful, it had to find that Lone Star knew that its conduct violated the law or had reckless disregard for whether its actions conformed to the law;[5] it was also instructed that good faith was a defense for Lone Star. The jury was entitled to weigh the credibility of the witnesses and the evidence presented and to find that the evaluation process set up by Lone Star was designed simply to establish its innocence in the event its actions were challenged later. This in itself, taken in connection with the intent to make age a factor and to discriminate against it, is sufficient to support a finding of willfulness.

III. Back Pay

■ Lone Star contends that Uffelman is entitled to back pay, if at all, only from May 1984, when he was discharged, to January 1985. Lone Star claims that it introduced overwhelming evidence that in January 1985 Uffelman made a conscious decision not to remain in the labor market for employment comparable to that which he had at Lone Star and that, therefore, he willfully failed to mitigate his damages.

Uffelman presented evidence at trial from which the jury could have concluded that he was unable to obtain comparable employment and that he eventually accepted a job as a hotel clerk in order to have some sort of gainful employment. That he worked less hours and made less money than he could have in that capacity does not mean that he should be entitled to no back pay from that time forward. Without more, we decline to disturb the jury's finding regarding the amount of back pay to which Uffelman is entitled.

The judgment of the district court is AFFIRMED.

---

**5.** Since the Supreme Court articulated this standard for "willfulness" in *Thurston,* circuit courts continue to add to the standard. *See Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1551 (10th Cir.1988) (willfulness in disparate treatment case requires finding that age was the "predominant factor" in employer's decision); *Dreyer v. Arco Chem. Co.,* 801 F.2d 651, 656–58 (3d Cir.1986) (finding of willfulness requires evidence of outrageous conduct by employer). The district court here actually instructed the jury that in addition to finding a knowing or reckless violation of the ADEA, it must find "that the Defendant engaged in outrageous conduct beyond mere violation of the [ADEA]" in order to find willfulness. This instruction undoubtedly was based on the Third Circuit's standard set out in *Dreyer,* the most stringent standard adopted by any circuit. We believe it exceeds the *Thurston* standard, but no one complains here because the jury found that Lone

Star's conduct was willful pursuant to this instruction. Perhaps the evidence here was sufficient to meet the "outrageousness" standard. As was discussed previously, Lone Star discharged Uffelman only nine months prior to the vesting of his pension benefits. In *Dreyer,* the Third Circuit wrote that "termination of an employee at a time that would deprive him or her of an imminent pension might show the 'outrageousness' of conduct that would warrant double damages." *Dreyer,* 801 F.2d at 658. Lone Star argues that, with nine months to go, the vesting of Uffelman's pension was not "imminent" as that word was used in *Dreyer.* While terminating an employee nine months before his pension is to vest may not be as egregious as terminating an employee with only nine days to go, the jury was entitled to consider this evidence in light of all the other facts and circumstances presented and to attribute to it whatever weight it deserved.