948 F.2d 1282
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ted S. SMITH, Sr., Plaintiff-Appellee,
v.
SPRINGS INDUSTRIES, INCORPORATED, Defendant-Appellant.
Ted S. SMITH, Sr., Plaintiff-Appellee,
v.
SPRINGS INDUSTRIES, INCORPORATED, Defendant-Appellant.
 Nos. 90-1716, 90-1783.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1991.
Decided Nov. 20, 1991.
 
 Appeals from the United States District Court for the District of South Carolina, at Rock Hill. Matthew J. Perry, District Judge. (CA-88-2148-O-OB)
 Argued: Benjamin Anderson Johnson, Roddey, Carpenter & White, P.A., Rock Hill, S.C., for appellant.
 Stephen Henry Brown, Hill, Wyatt & Bannister, Greenville, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before K.K. HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and KISER, United States District Judge for the Western District of Virginia, Sitting by Designation.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Springs Industries, Inc., appeals a judgment in favor of Ted S. Smith, Sr., for double back pay entered on a verdict for willful violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. Springs also appeals the district court's allowance of attorneys' fees and costs. The principal issues are whether the reason Springs asserted for firing Smith was pretextual, whether Springs willfully violated the Act, and whether the district court abused its discretion by allowing a contingency enhancement of the attorneys' fees. Finding no error with respect to these and other issues Springs raises, we affirm.
 
 
 2
 * Springs, a textile manufacturer, hired Smith to work in its Grace Bleachery in Lancaster, South Carolina. Smith eventually attained the position of shift supervisor over a cloth finishing operation, with responsibility for requisitioning materials and reviewing the performance of 40 other employees. In 1972, Springs transferred Smith with no reduction in salary to its Chemical Processing Laboratory at its Research and Development Facility in Fort Mill, South Carolina. Smith retained the title of supervisor, although his duties then involved mixing chemicals, running the tenter frame machine, and finishing, inspecting, wrapping, rolling, and shipping the cloth. Dennis Neeley and Mike McBrayer, both age 39, performed similar cloth finishing functions in the laboratory, although Springs paid them roughly half what it paid Smith. Another employee classified as a supervisor, Johnny Robinson, also worked in the laboratory. In 1986, the company transferred Joyce Anne McCray, age 34, to the laboratory. She performed some of the same work as Smith at a wage of about half Smith's salary.
 
 
 3
 In 1986, Dr. James Hendrix, Springs' Vice President of Research and Development, instructed Dr. Thomas Tolbert, manager of the laboratory, to review the organization, staffing, equipment, and processing in the laboratory. Tolbert recommended that the two jobs with the title of supervisor be combined into one job, that Robinson be retained, and that Smith's position be eliminated. Hendrix accepted the recommendation.
 
 
 4
 When Springs discharged Smith in 1986, he was 53 years old. He had worked for the company for over 34 years and was just two years short of eligibility for Springs' retirement program. He was fully vested in the company's pension and profit-sharing plan from which he received a full payout. He also received severance pay.
 
 
 5
 Smith subsequently filed suit against Springs, alleging violation of the ADEA. After the district court denied motions for a directed verdict, the jury returned a verdict against Springs and awarded Smith back pay damages of $59,613. By special interrogatory, the jury found that Springs had willfully violated the ADEA, entitling Smith to an additional $59,613 in liquidated damages pursuant to 29 U.S.C. § 626(b).
 
 
 6
 Springs then sought judgment notwithstanding the verdict or a new trial. The district court denied Springs' motions and entered judgment on the verdict for back pay and liquidated damages. It also ordered that Smith be reinstated. The district court awarded Smith $61,470 in attorneys' fees, a sum which included a $15,000 contingency enhancement.
 
 II
 
 7
 In reviewing the denial of a motion for a directed verdict or JNOV, we determine whether the record, when viewed in the light most favorable to the nonmoving party, contains evidence sufficient to support the jury's findings. Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir.1988). Smith's claim that he would not have been fired but for his age raises issues of causation and motive. The inferences that a jury draws to resolve these issues must be reasonably probable; speculation is impermissible. Lovelace v. Sherwin Williams Co., 681 F.2d 230, 241-42 (4th Cir.1982). These precepts are particularly applicable here because the evidence was in sharp conflict, and determination of these questions depended in large part on an assessment of the credibility of the witnesses. The finding of motive should not be set aside unless the evidence clearly compels it. Taylor v. Home Ins. Co., 777 F.2d 849, 854 (4th Cir.1985). We review the denial of a motion for a new trial for abuse of discretion. Herold, 864 F.2d at 321.
 
 
 8
 This circuit allows ADEA plaintiffs to use the scheme of proof originally developed for Title VII cases. EEOC v. Western Electric Co., 713 F.2d 1011, 1014 (4th Cir.1983). In Duke v. Uniroyal, Inc., 928 F.2d 1413 (4th Cir.1991), we refined the requirements of an ADEA case when there is a reduction in force or, as here, a reorganization of a department. Plaintiffs must establish that:
 
 
 9
 (1) they were protected by the ADEA; (2) they were selected from the group or territory for termination; (3) they were performing at a level substantially equivalent to the lowest level of those retained in the group or territory; and (4) the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a level lower than that at which the plaintiffs were performing. Once a prima facie case is established, the employer may articulate a legitimate nondiscriminatory basis of selection, in which case the plaintiff bears the burden of demonstrating that the employer's basis was a mere pretext for discrimination and that age was a determining factor in the selection process.
 
 
 10
 928 F.2d at 1418.
 
 III
 
 11
 Although this case was tried before we decided Duke, Smith's evidence viewed in the light most favorable to him established a prima facie case, and the district court did not err by denying the motions for a directed verdict and JNOV. Because he was over 40, Smith was protected by the ADEA. 29 U.S.C. § 631(a). He was selected from the laboratory for termination. He was performing at least at a level substantially equivalent to the lowest level of those employees retained in the laboratory. Smith's discharge increased the ratio of unprotected persons to protected persons in the laboratory. Some of the unprotected persons were performing at a lower level than Smith. Hendrix, the vice president who made the ultimate decision to discharge Smith, testified that Smith was terminated for reasons unrelated to job performance.
 
 
 12
 The central question in this appeal is whether the evidence reasonably justified the jury's rejection of the reason Springs gave for discharging Smith. Springs insisted that it eliminated Smith's position because it was unnecessary to employ two supervisors, Smith and Robinson. Springs introduced testimony that Smith bore the title of supervisor, that he was carried on the payroll at a supervisor's salary, and that a table of organization showed both Smith and Robinson as supervisors. Through cross-examination it unsuccessfully sought to show that Smith exercised supervisory duties. It argued that Smith supervised Neely and McBrayer, but it never called these employees to support its argument.
 
 
 13
 Smith testified that he had worked himself up through several positions to become supervisor of about 40 production workers in one of Springs' plants. In 1972, Springs transferred him to the laboratory where he performed numerous jubs to prepare samples of fabrics to meet specifications. He carried with him the title and pay of a supervisor, but he had no supervisory duties. Unlike his position at the production plant, he did not discipline other employees, validate their excuses for illness or other causes, or direct their work. He was a supervisor in name only, and his pay reflected his skills and experience, which were recognized by merit raises almost every year.
 
 
 14
 Smith's testimony was corroborated by Hendrix, who admitted that Smith was "actually an on-the-floor laborer" and that he did not have any "managerial responsibilities." Hendrix acknowledged that the job titles in the laboratory did not accurately reflect the jobs performed.
 
 
 15
 Smith also introduced evidence that younger employees in the laboratory were doing much of the same work as he at about half of his salary. He also showed how Springs reduced expenses by firing him before retirement. He presented evidence of his lost wages and the value of his lost benefits. To mitigate his damages, he worked at odd jobs after he was discharged.
 
 
 16
 This evidence, which was accepted by the jury and the district court, fully supports the verdict and justifies the district court's disposition of Springs' motions on the issues of age discrimination and damages.
 
 IV
 
 17
 The issue of Springs' willfulness is more difficult. Liquidated, or double, damages are payable only if there is a willful violation of the Act. 29 U.S.C. § 626(b). A violation of the ADEA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985). A violation is not willful if an employer acts reasonably and in good faith. 469 U.S. at 128 n. 22. Proof that the employer simply acted negligently is insufficient to show willfulness. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Without objection, the district court paraphrased Trans World Airlines in its charge to the jury.
 
 
 18
 Review of the record discloses that the evidence is sufficient to sustain the jury's verdict. Springs knew that Smith was within the age group protected by the ADEA. The company did not suffer an economic downturn requiring a reduction in force, and several months before Smith's termination it brought a younger employee, who earned much less than Smith, into the laboratory to perform some of his duties. Smith presented evidence and testimony on job functions that directly contradicted Springs' reasons for terminating him. Such evidence could reasonably have caused the jury to find that the company lacked credibility and good faith in terminating Smith. Even though the vice president responsible for the discharge knew that Smith was actually an on-the-floor laborer without managerial responsibilities, the company discharged Smith on the pretext that two supervisors were not needed in the laboratory. The jury reasonably could find from this evidence that the company recklessly disregarded the Act. Although Smith received full payment from the company's pension and profit-sharing plan, he lost health benefits that he would have otherwise received had he been allowed to work two more years to reach retirement age. Smith introduced evidence that this deprivation of health benefits saved Springs money.
 
 
 19
 Springs showed that a manager in the personnel department consulted with the company's house counsel regarding the decision to discharge Smith. While such consultation is a factor to be considered in determining whether an employer acted in good faith, it does not preclude a finding of willfulness. Uffelman v. Lone Star Steel Co., 863 F.2d 404, 409 (5th Cir.1989). Although its house counsel was present in the courtroom, Springs did not call him to explain his role in Smith's discharge. Instead, the company unsuccessfully sought to reveal its counsel's advice through hearsay evidence. For the jury to evaluate his advice, much depended on what facts were furnished the house counsel. If he were simply told that Smith was an excess supervisor, he might well have approved the discharge. Conversely, if he were told that Smith was actually an on-the-floor laborer without managerial responsibilities, the house counsel prudently might have disapproved of the plan to discharge Smith on the pretext that he was a supervisor. Although the company had ample opportunity to present all the facts pertaining to the role that its house counsel played, it elected not to do so. This was an omission the jury could consider in evaluating Springs' defense. See Uffelman, 863 F.2d at 409.
 
 
 20
 The district court properly instructed the jury, and the evidence reasonably supported a finding that Springs either knew or showed reckless disregard for the fact that the termination of Smith violated the ADEA. We conclude that the district court did not err in denying a directed verdict or JNOV with respect to the issue of willfulness.
 
 V
 
 21
 Springs assigns error to the district court's admission of testimony about front pay. It also asserts that this assignment of error establishes that the district court abused its discretion in denying a new trial.
 
 
 22
 The district court was aware of a split in circuit authority about whether the jury or the judge should decide the question of front pay. Since the plaintiff's expert witness was available, the court allowed him to testify, reserving decision on the functions of court and jury. Before the case went to the jury, the court ruled that the question of front pay should be considered by the court when it dealt with the request for equitable relief. By this ruling it correctly anticipated Duke, 928 F.2d at 1421-25, which canvasses case law on this subject. The district court instructed the jury not to consider front pay and withdrew from the jury all exhibits pertaining to this issue.
 
 
 23
 We find no cause for reversal in the district court's initial admission of the evidence pertaining to front pay. In view of the split in authority among the circuits, and the absence of a definitive ruling from our court when the case was tried, the district court did not abuse its discretion. Moreover, the jury's damage award was not tainted by the addition of any front pay.
 
 VI
 
 24
 After the jury returned its verdict, Smith moved for entry of judgment, requesting the court to award him either front pay or reinstatement to his former position. The court ordered reinstatement in a position comparable to that which Smith previously held. Springs argues that Smith should not be reinstated with his previous pay. It asserts that he was entitled to no more than the position and salary of a lab technician like the two 39-year-old employees who performed duties similar to Smith's.
 
 
 25
 Although reinstatement generally is preferable to front pay, the purpose of both equitable remedies is to make the plaintiff whole. See Duke, 928 F.2d at 1421-25. We conclude that the district court did not err in ordering Smith reinstated at a comparable salary, rather than the salary of employees with less experience and a shorter tenure with the company. The district court noted that Smith conceded that upon reinstatement he must return the money he received from the company's profit sharing and pension account.
 
 VII
 
 26
 Springs assigns error to the district court's award of attorneys' fees. It argues that the district court erred by awarding the fees, by granting Smith a contingency enhancement, and by refusing to eliminate hours spent on Smith's unsuccessful front pay claim.
 
 
 27
 The district court awarded Smith attorneys' fees pursuant to 29 U.S.C. § 626(b), which incorporates the attorneys' fees provisions of 29 U.S.C. § 216(b). Our review is governed by sound precedent: "[A]n allowance of attorneys' fees by a district court, which has close and intimate knowledge of the efforts expended and the value of the services rendered, must not be overturned unless it is 'clearly wrong.' " McManama v. Lukhard, 616 F.2d 727, 729 (4th Cir.1980).
 
 
 28
 Since Smith prevailed in this action, he is entitled to reasonable attorneys' fees and costs. Enhancement for the risk associated with a contingency fee is appropriate only if "the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II), 483 U.S. 711, 733 (1987) (O'Connor, J., concurring in part and concurring in judgment); see also Spell v. McDaniel, 824 F.2d 1380, 1404 (4th Cir.1987). The district court found that Smith "would have had a difficult time obtaining competent counsel in [the local market] to represent him in his employment discrimination action against this Defendant...." This finding is supported by the record. It is not clearly erroneous, and the district court did not err in granting a contingency enhancement.
 
 
 29
 We find no merit in Springs' argument that Smith cannot recover for his attorneys' time spent on the issue of front pay. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). While Smith did not receive front pay, he nonetheless prevailed on the merits and received the alternative remedy of reinstatement. Moreover, the evidence about front pay was relevant to the district court's choice of the kind of equitable relief it should grant. Consequently, the district court did not err by allowing attorneys' fees for the hours spent on the front pay claim.
 
 
 30
 There is no cause for reversal in Springs' other assignments of error.
 
 AFFIRMED
 
 31
 KISER, District Judge, concurring in part and dissenting in part:
 
 
 32
 I concur with the majority in all but Part IV of its opinion. As to Part IV, I respectfully dissent. My primary reason for dissenting is that I believe the majority has misapplied Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985), in determining that there is sufficient evidence to support the jury's finding that Springs willfully violated the ADEA. In Thurston, the Court said that a willful violation occurs if "the employer either knew or showed a reckless disregard ..." that its actions violated the Act. Id. at 128. Stated alternatively, a willful violation is made out if the proof shows that the defendant intentionally violated the Act or, if the plaintiff cannot prove an intent to violate the Act, he may carry his burden of proof of willfulness by proving that the defendant acted with reckless disregard toward the Act. Thus, it appears that the strongest case for proving a willful violation of the Act is made when the plaintiff proves an intentional violation. The reckless disregard component of the test is a fall-back position for the plaintiff when he cannot show that the defendant intended to violate the Act.
 
 
 33
 In considering the Thurston test, we must be mindful of the factual basis of the case. Thurston involved a job bidding policy which placed airline pilots over the age of 60 at a disadvantage. As such, it was a disparate impact case and to prove the underlying violation of the ADEA, the plaintiffs only had to prove the discriminatory effect of the policy; it was not necessary for the plaintiffs to prove that TWA intentionally discriminated against them individually because of their age. Under this scenario, the Court said that for the plaintiffs to raise the violation to the level of a willful violation, they must adduce evidence to show that TWA intentionally violated the Act or acted with reckless disregard as to whether its action would violate the Act. In sum, the Court engaged in a two-tiered analysis--first: did TWA's policy have a disparate impact, and second: was the policy intentionally formulated in violation of the Act or in reckless disregard of it.
 
 
 34
 The Court again applied a two-tiered analysis to determine the issue of willfulness in McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988). (On this occasion, the Court was considering "willfulness" as it applied to an extension of the statute of limitations under the Fair Labor Standards Act.) In determining willfulness, vel non, the Court stated: The fact that Congress did not simply extend the limitation period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations.
 
 
 35
 Id. at 132. This Court recognized the McLaughlin distinction between ordinary violations and willful violations in Pforr v. Food Lion, Inc., 851 F.2d 106, 110 (4th Cir.1988).
 
 
 36
 In the case before us, for Smith to prevail on his underlying claim of discrimination, it was necessary for him to prove that Springs intentionally discriminated against him because of his age. The evidence recounted in the majority opinion supports the jury's verdict that Springs intentionally discriminated against Smith, but to stop there in the analysis would, in my view, be equating intentional discrimination to a willful violation of the Act and thus obliterating the distinction between an ordinary violation and a willful violation. Thus, every case of intentional discrimination would, per force, be a willful violation of the ADEA entitling the plaintiff to liquidated damages. To apply the Thurston standard in this manner ignores the requirement of a two-tiered analysis as instructed by McLaughlin and Pforr.
 
 
 37
 We have held in the past that to prove a willful violation of the ADEA, the proof of an ordinary violation of the Act will not suffice--the plaintiff must prove outrageous conduct by the employer. Gilliam v. Armtex, Inc., 820 F.2d 1387 (4th Cir.1987). Smith's evidence does not rise to this level.
 
 
 38
 Smith's termination was the result of a reorganization of the staffing of the laboratory that combined two supervisors' jobs into one. Smith does not challenge the legitimacy of the reorganization. He does not claim it was done to get rid of him. His claim, which the jury sustained, was that age was a factor in choosing the person who would fill the new supervisor's position. The evidence does not smack of the outrageous conduct that is required to carry the cause to the level of a willful violation.
 
 
 39
 Two subsidiary points in Part IV of the opinion bear comment. First, the majority seems to imply that even if the evidence does not sustain a finding of willfulness, Springs has waived the point by failing to object to the district court's instructions which embodied the Thurston test. Springs' motion JNOV on the issue of willfulness is not predicated on erroneous instructions, but rather, on the motions for directed verdict which were made at the close of the plaintiff's evidence and again at the close of all the evidence. Although the district court's instructions were the law of the case--even if erroneous--for the guidance of the jury's decisions, they did not control the proper legal standard to be applied by the trial judge in ruling on the motions for directed verdict. Thus, if the trial judge applied the incorrect legal standard in ruling on the directed verdict motions, his error was not cured by an instruction based on the same misconception, even though Springs failed to object to it. Once a party has made his position clear, he need not restate it. City of Richmond v. Madison, 918 F.2d 438, 453 (4th Cir.1990).
 
 
 40
 The second subsidiary point with which I disagree is the majority's approval of an evidentiary ruling by which the district court excluded as hearsay the testimony of the manager of the Personnel Department regarding legal advice he received in his discussions with house counsel. The issue for which the testimony was offered was to show the state of mind of the personnel manager (he was the person responsible for terminating Smith) as it applied to the claim that Springs' conduct was willful. The manager sought to testify that he had obtained legal advice and what that advice was. The advice that counsel gave him was not being offered for the truth of the statement but as an explanation of the manager's rationale for terminating Smith. Thus, the statement of counsel to the manager was not hearsay. Fed.R.Evid. 801(c); United States v. Leake, 642 F.2d 715, 720 (4th Cir.1981). We do not know what advice counsel gave to the personnel manager because Smith made no offer of proof and, because of this, it cannot be said that this error was prejudicial.
 
 
 41
 For these reasons, I respectfully dissent.