**Robert WARD, Plaintiff,**

v.

**GULFSTREAM AEROSPACE CORP., INC., Defendant.**

Civ. A. No. 494–161.

United States District Court,
S.D. Georgia,
Savannah Division.

July 28, 1995.

1574

Howard Eugene Alls, Howard E. Alls & Associates, P.C., Savannah, GA, for plaintiff Robert S. Ward.

Kathleen Horne, Inglesby, Falligant, Horne, Courington & Nash, Savannah, GA, for defendant Gulfstream Aerospace Corp.

### *ORDER*

EDENFIELD, Chief Judge.

Plaintiff Robert Ward, a fifty-two year old white male, was discharged by the Defendant Gulfstream Aerospace (Gulfstream) pursuant to a reduction in force (RIF). Ward sues Gulfstream alleging age and race discrimination in the process by which the RIF was conducted. Gulfstream moves for summary judgment on grounds that Ward cannot establish a prima facie case. Alternatively, Gulfstream contends that even if Ward can establish a prima facie case he can set forth no evidence that Gulfstream's proffer of a legitimate non-discriminatory reason for its actions is pretextual. For the reasons stated below the Court GRANTS Defendant Gulfstream's motion.

### I. *Summary Judgment Standard*

Summary judgment is appropriate only if the available evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). Where the parties' factual statements conflict or inferences are required, the Court will construe the facts in a light most favorable to the nonmovant. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987). When the movant does not have the burden of persuasion on an issue, he may prevail on a motion for summary judgment by showing that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's case. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the movant makes a sufficient showing, then the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A dispute of fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A mere "scintilla" of evidence does not suffice to support the nonmovant's position. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the nonmovant's response consists of nothing more than conclusory allegations, the Court must enter summary judgment for the movant. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). The Court will not weigh conflicting evidence or make credibility determinations, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14, but where the nonmovant's evidence is insufficient to allow a reasonable jury to return a verdict in its favor, or is merely colorable or not significantly probative, then the movant is entitled to summary judgment. *Id.* at 249, 106 S.Ct. at 2510–11.

## II. *Facts*

The facts in this case are largely undisputed. Where in dispute, the facts are stated in a light most favorable to the nonmovant Ward.

Gulfstream hired Ward as a tool and cutter grinder in October 1987, at age forty-six. Ward was employed in this capacity until September 27, 1993, when Gulfstream closed its Numerical Control Machine Shop. As a result of closing this shop, Gulfstream's labor needs in Department 432, where Ward worked, were reduced. Consequently, Gulfstream decided to downsize this department from eleven employees to four and Ward's employment was terminated pursuant to this RIF. Ward does not allege that the RIF was conducted for discriminatory reasons, rather, he asserts that the manner in which it was conducted was discriminatory.

Gulfstream conducted the RIF by evaluating the employees against a "skills matrix," which was composed of the employee skills required to accomplish the department's continuing mission. Gulfstream then ranked the employees against this skills matrix, and used seniority as a tie breaker. (Vonashek Affidavit ¶ 5, 6). Dennis Smithwick, the supervisor of Department 432, developed the list of skills and equipment against which the employees in the department would be graded. For each skill listed an employee received one point if he possessed the skill and no points if he did not. Each employee's proficiency on a given piece of equipment was graded on a scale of one to three. An employee received three points if he was totally proficient, two points if he was simply capable of using the equipment, and one point if he could not use the equipment at all. The total points awarded for the equipment and skills identified were then combined to arrive at each employee's overall score. (Smithwick Affidavit ¶ 4).

Initially, twenty-five required skills and eleven pieces of equipment were used to grade the eleven employees of Department 432. This system yielded six employees, including Ward, tied with a perfect score of 58. Using seniority as a tie breaker, the four employees initially selected for retention were Danny Smalley (white, age 38), Mark Shaw (white, age 31), Paul Heaton (white, age 33) and Johnnie Smith (white, age 35). The seven employees not selected for retention included Ward and the four other employees over forty, as well as two individuals under forty. As for race, this initial review would have resulted in the discharge of all three black employees, as well as four whites. However, this initial plan was never implemented.

After this initial review, Harold Chisolm (black, age 51) was among those scheduled for lay-off, as his total score was a 57, one point shy of a perfect 58. Chisolm complained that the evaluation was unfair because he had insufficient opportunity to use the R.O. Grinder, the one machine that kept him from having a perfect score, and because the N.C. Grinder, a newer machine on which he was proficient, was not included in the evaluation. Chisolm never alleged that the initial evaluation contained any age or race bias. Smithwick decided that the R.O. Grinder would remain on the list but that the N.C. Grinder would also be placed on the list, because it was only fair to do so, and Gulfstream would continue to use this machine. (Smithwick Affidavit ¶ 10, Vonashek Affidavit ¶ 10).

After the N.C. Grinder was added to the list, Gulfstream recalculated the scores. Five of the eleven employees received an extra point for knowing how to use that machine. Smalley now had the new perfect score of 59, while six others, including Ward and Chisolm, scored a 58. Using seniority as the tie breaker, the new scores (which were implemented) resulted in the retention of Smalley, Shaw, Heaton and Chisolm. The only change was that Chisolm displaced Smith (white, age 35), but this had no effect on Ward.[1] Of the seven employees not retained in Department 432, only four were terminated (three whites and one black ranging in ages from 35 to 52). Two employees were transferred to other departments (black, age 31; white, age 35) and another employee was out on medical leave and never returned. (Smithwick Affidavit ¶ 15).

Ward claims that the skills matrix was designed with an intent to eliminate the older and black employees. Further, he alleges that the reason Gulfstream modified the matrix was to "hide their discriminatory purpose ... by finding a way to keep Harold Chisolm, a black over the age of fifty." (Ward Statement of Material Fact ¶ 6).

After his termination Ward filed an EEOC complaint. The EEOC found in favor of Gulfstream, issued a right to sue letter, and Ward filed the present suit.

### III. *Analysis*

Ward sues for age discrimination under the Age Discrimination in Employment Act (ADEA) and race discrimination under Title VII. The ADEA makes it unlawful for an employer "[t]o discharge ... any individual or otherwise discriminate against any individual ... because of such individual's age[.]" 29 U.S.C. § 623(a). Title VII provides the same protection on the basis of race. 42 U.S.C. § 2000e–2(a)(1). In both ADEA and Title VII disparate treatment claims such as Wards', a plaintiff can use circumstantial evidence to raise an inference of discrimination by employing the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See e.g.,*

*Mitchell v. Worldwide Underwriters Insurance Co.*, 967 F.2d 565, 566 (11th Cir.1992).

The *McDonnell Douglas* framework requires a plaintiff to establish that his employer had an intent to discriminate. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). To establish the employer's intent to discriminate the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If a plaintiff successfully establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for its action. *Id.* This intermediate burden is "exceedingly light," and once the employer offers a justification, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate. *Batey*, 24 F.3d at 1334.

Ward's complex legal theory boils down to this: Gulfstream's method of conducting the RIF was designed to ensure that only white males under the age of forty were retained. (Ward Brief at 12). Then, to disguise this scheme, they changed the evaluation procedure to ensure that a black male over the age of forty was retained. Unfortunately for Ward, there is nary a shred of probative evidence to support this elaborate scenario.

### A. Prima Facie Case

In a RIF case, a plaintiff may establish a prima facie case by showing: (1) that he was in the protected class and was discharged, (2) that he was qualified for another (or remaining) position at the time of his discharge, and (3) by producing circumstantial or direct evidence which would permit a reasonable fact finder to conclude that the employer intended to discriminate on the basis of the protected characteristic. *Mitchell*, 967 F.2d at 567, 568.

Ward meets the first two prongs of this test. Race is a protected characteristic un-

---

1. Ward would not have been retained under either evaluation. The revised test displaced John-

nie Smith, a thirty-five year old white male who is not part of this suit.

der Title VII, and the ADEA protects those over the age of forty. Since Ward had the same evaluation score as those who were retained, the Court assumes that he was qualified to remain in Department 432. Thus, the sole issue here is whether Ward has set forth evidence creating a genuine issue of fact such that a reasonable jury could conclude that Gulfstream intended to discriminate on the basis of age or race.

▆▆▆ As for this third prong of the test, a plaintiff must produce some evidence that an employer has not treated the protected characteristic neutrally, but has discriminated based upon it. *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981), *cert. denied* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). There must be evidence from which a reasonable jury could conclude either (1) that Gulfstream consciously refused to retain Ward because of his race or age, or (2) that Gulfstream regarded age or race as a negative factor in the decision. *Id.*

Ward attempts to use circumstantial evidence to show that Gulfstream intended to conduct the RIF on the basis of age and race. Ward relies on *Uffelman v. Lone Star Steel Co.*, 863 F.2d 404 (5th Cir.), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989), for the broad proposition that when employees younger than the plaintiff are retained to do the same job, this is evidence of an intent to discriminate. However, Ward's reliance on *Uffelman* is misplaced, as he wrenches the narrowly tailored holding out of context. In *Uffelman*, nine of the ten terminated employees were over forty, and only one of the twenty-four employees under forty was terminated. *Id.* at 406, 408. There was also evidence of disparate treatment other than the discharge. *Id.* at 408. Also, the retained younger employees were less experienced, and the terminated older employees were higher paid and closer to retirement. *Id.* at 408. In fact, Uffelman was terminated nine months before his pension vested. *Id.* Thus, there was a substantial cost savings motivation in

firing Uffelman and the other older employees, a typical motive in age discrimination cases.

In contrast, Ward's situation is easily distinguished from *Uffelman.* First, Ward's statistics are not nearly so compelling as those in *Uffelman;* of the seven employees not retained in Department 432, three were under forty. Moreover, there is no allegation or evidence that older employees were treated different from younger employees or that any statements were ever made indicating age bias. Furthermore, there is no evidence that the retained employees were paid less, thus giving the company a motivation to retain them, or that the older discharged employees were closer to retirement than those retained.

▆▆▆ In fact, when seniority is used as the ultimate deciding factor, as it was in Ward's case, the typical motivational factors of age discrimination are likely absent because the retained senior employees are apt to be the closest to vesting and the highest paid. Ward submits no evidence to the contrary. The only evidence in the present case is that some older employees were fired while some younger employees were retained, but the ADEA does not require an employer to fire younger employees so that those in the protected age group can be retained. *See Barnes*, 814 F.2d at 610. Thus, Ward has provided no evidence from which a reasonable jury could infer an intent to discriminate on the part of Gulfstream.

Ward also asserts that since the original skills matrix would have resulted in 100% termination of the employees in the protected classes, circumstantial evidence exists that Gulfstream intended to discriminate, even though the original plan was never implemented.[2] (*Id.* at 9). He argues that a "significant statistical disparity between employees retained inside the protected class and those released" is evidence supporting a prima facie case. (Ward Brief at 8).

▆▆▆ Indeed, a plaintiff may use statistics to establish a prima facie case if those

**2.** Even though the initial plan was not implemented, Ward argues that it is not immaterial, because it demonstrates that Gulfstream intend-

ed to discriminate all along, and the second plan was actually implemented as a cover for this discriminatory purpose.

statistics show a pattern of discrimination. *Pace v. Southern Ry. System*, 701 F.2d 1383, 1388 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). While a plaintiff in a classwide disparate treatment case may rely on statistics alone if they are "sufficiently compelling," in an individual case of disparate treatment, such as this one, statistics are relevant but cannot alone establish a prima facie case. *Smith v. Horner*, 839 F.2d 1530, 1536 n. 8 (11th Cir.1988). In any event, Ward's statistics are certainly not compelling and have little relevance, because they are drawn from a sample size of only eleven individuals, only four of whom were retained in the department, and one of those was in both of the protected classes. Of the seven employees not retained in the department, three were under the age of forty and five were white.[3] Clearly, Ward's statistics do not evidence a pattern of discrimination as to age or race, and without other proof of discriminatory intent, these "statistics" cannot create a genuine issue of fact as to whether Gulfstream intended to discriminate.

 Ward's theory relies on his own conclusory allegations instead of probative evidence. (See Ward's Statement of Material Facts). He has set forth no evidence that race or age was a factor in the RIF and there is not a scintilla of evidence to support Ward's bald allegation that the skills matrix was modified with the purpose of hiding some insidious discriminatory plot. There is nothing to indicate that the matrix was changed with the specific intent of retaining Chisolm, much less that he be retained as some kind of "token" to hide a discriminatory purpose.[4] When supported by no other evidence, the mere fact that Mr. Chisolm was black and over forty cannot give rise to a reasonable inference that the matrix was modified to hide a discriminatory purpose.[5]

 The law does not require this Court to further entertain the wild speculation and unsupported conclusion advanced by Ward. On a motion for summary judgment the Court is required to resolve all *reasonable* doubts in favor of the nonmovant, but it is not required to resolve *all* doubts in such a manner. *Barnes*, 814 F.2d at 609. It is the plaintiff's burden to introduce evidence that supports a *reasonable* inference of intentional discrimination. *Id.* at 610. The vast inferences drawn by Ward are not supported by the evidence and are not reasonable. A Court must bear in mind the "quantum and quality" of proof necessary to support liability, and where there is insufficient evidence in the prima facie case to require submission of the case to a jury, the Court must grant summary judgment. *Id.* Because the evidence produced by Ward is insufficient to allow a reasonable jury to infer that Gulfstream intended to discriminate on the basis of age or race, the Court grants Gulfstream's motion for summary judgment.

## B. Legitimate Non-discriminatory Justification

Alternative grounds also support summary judgment for Gulfstream. Even if Ward es-

---

3. The initial skills matrix has little statistical relevance because it was never implemented and affected no one. Further, the sample size of eleven individuals gives the statistics little weight. *See e.g., Teamsters v. United States*, 431 U.S. 324, 340 n. 20, 97 S.Ct. 1843, 1856–57 n. 20, 52 L.Ed.2d 396 (1977). An employer, when retaining only four of eleven employees, should not be compelled to retain individuals from protected classes merely so he can make the statistics look good. Such a requirement is discriminatory in itself.

4. There is absolutely no evidence that Mr. Chisolm's age or race was considered at all when the skills matrix was modified. Again, Chisolm complained only that the N.C. Grinder should have been included and there is no allegation that Chisolm ever raised the issues of age or race.

5. At this point the Court feels compelled to point out that Ward's theory appears to be somewhat disingenuous. He argues in his brief that he has been harmed by age and race discrimination, but states in his deposition that his real complaint was that Harold Chisolm was retained and Ward was not. Ward stated that he did not have a problem with the three younger employees who were retained, rather, he felt that he should have been kept instead of the fifty-one year old Chisolm. (Ward Deposition at 29–30). However, it must be reiterated that Ward would have been laid off under either matrix and that Chisolm displaced Johnnie Smith, not Ward. Nevertheless, the Court accepts Ward's argument as being made in good faith and has examined it accordingly, as this inconsistency goes chiefly to credibility, which cannot be considered on a motion for summary judgment.

tablished a prima facie case, summary judgment would still be appropriate because Gulfstream has produced evidence of legitimate non-discriminatory reasons for its decision, and Ward has set forth no evidence from which a reasonable jury could conclude that Gulfstream's justification is pretextual.

■ Ward invites this Court to interpret the Supreme Court's decision in *St. Mary's* as holding that once the plaintiff makes out a prima facie case, summary judgment is no longer appropriate and the plaintiff is automatically entitled to a jury trial. This is an absurd interpretation of that opinion and a misstatement of the law.[6] According to Ward's theory, any statistical disparity would force a defendant to submit to a trial. This collides with the Supreme Court's admonition that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules ... which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. To that end:

> A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case *and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, nondiscriminatory reasons for the discharge, a genuine issue of material fact is not automatically created.*

*Pace*, 701 F.2d at 1391 (emphasis added); *See also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir.1987) (where defendant's justification evidence completely overcomes any inference to be drawn from plaintiff's evidence court may grant summary judgment).

Accordingly, summary judgment is appropriate here because Gulfstream offers a legitimate non-discriminatory reason for its actions and Ward cannot demonstrate a genuine issue of fact as to whether this justification is mere pretext. Gulfstream asserts that the RIF process was based on the skills necessary for Department 432's ongoing mission. They attempted to develop an objective list of the skills which that department would utilize after the RIF and used seniority as a tie breaker. This is a proffer of a legitimate non-discriminatory justification for the RIF process. Ward must show a genuine issue of fact that would allow a reasonable jury to conclude that this justification is mere pretext.

Ward argues that Gulfstream's proffered non-discriminatory reason was shown by its own actions to be pretextual, because Gulfstream did not adhere to its own purportedly legitimate criteria when they modified the matrix after Chisolm's complaint. Ward states:

> The defendant's abandonment of its purportedly legitimate, initial decisionmaking criteria and its adoption of new criteria show not only that the second round of decisionmaking was tainted by discriminatory intent with respect to age and race (i.e., an intent to render less obvious the discriminatory intent and results of the first round by now including an older, black employee), but it also constitutes circumstantial evidence that the entire decisionmaking process was age and race sensitive.

(Ward Brief at 11).

Thus, Ward's theory appears to be that this matrix was designed from the start with an intent to eliminate older and black employees, and if the matrix was modified in a manner that was inconsistent with its original purpose, this must mean that the original matrix was not based on important or legitimate criteria, thus it was pretextual. (Ward Brief at 18). As evidence, he relies on the deposition testimony of Dennis Smithwick,

---

6. Ward quotes *St. Mary's* out of context. That case stands only for the proposition that if a jury disbelieves the defendant's proffer of a legitimate non-discriminatory reason, the jury may find then for the plaintiff, but is not required to do so. *See St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749.

the manager who developed the matrix. Although this testimony is properly excluded because Ward failed to file this deposition, *See Barnes,* 814 F.2d at 611, the Court has nevertheless examined this evidence and finds that it does not support Ward's position.

First, the Court notes that Gulfstream never "abandoned" the initial criteria, rather, they slightly modified it by adding one item to an existing list of twenty-five. Second, Smithwick merely stated that he originally left the N.C. Grinder off because he felt that it was not essential in evaluating the employees. He stated that he later agreed to add this item because it was fair to do so, and Gulfstream would continue to use it, even if the item was not absolutely essential. (Smithwick Deposition at 99–100). This testimony does not support Ward's assertion that the skills identified were not important or were not the real criteria for conducting the RIF. In fact, Ward himself felt that the final matrix was a "fair set of skills and equipment to be ranked against," and did not see any items that were on the list (including the N.C. Grinder) that should have been omitted. (Ward Deposition at 49–50). Thus, just as Gulfstream offered a non-discriminatory reason for using a skills matrix to conduct the RIF, they likewise provide a legitimate non-discriminatory justification for changing it.

 Finally, Ward argues that Gulfstream should have used their periodic subjective work evaluations of employees to conduct the RIF, and that he would have been retained if that had been done, because he was more qualified than Chisolm. However, this is a "red herring" because it does nothing to establish a genuine issue of fact as to whether the method actually used by Gulfstream was discriminatory or pretextual. While evidence of alternative methods is relevant in disparate impact theory cases (where proof of intent is not necessary), Ward does not advance a disparate impact theory, and even under that theory, the mere suggestion of an available alternative practice is insufficient to meet the plaintiff's burden. *MacPherson v. University of Montevallo,* 922 F.2d 766 (11th Cir.1991). Thus, Ward's

subjective opinion of the best way to conduct the RIF is simply irrelevant; it does nothing to indicate that age and race were not neutral factors in Gulfstream's decision.

Ward's burden is to produce evidence from which a reasonable jury could infer that Gulfstream intended to discriminate and that the criteria relied on were pretextual. *Williams,* 656 F.2d at 129. The undisputed facts show that Smithwick relied on the criteria he developed, and Ward has submitted no evidence from which a reasonable jury could infer that this criteria was not age and race neutral, or was devised with an intent to discriminate. Ward has already admitted that the skills matrix used in the RIF was a fair set of skills and equipment to be ranked against, and he produces no evidence that such criteria were developed with a discriminatory motive.

 In sum, Ward simply produces no evidence that supports a reasonable inference that Gulfstream's justification for using the skills matrix to conduct the RIF was mere pretext. To survive summary judgment once the defendant has produced a legitimate non-discriminatory reason for its actions, a plaintiff must produce *concrete evidence in the form of specific facts* which show that the defendant's proffered reason is mere pretext. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990) (emphasis added). Ward's argument is based on conclusory allegations and wild speculation wholly unsupported by concrete evidence or specific facts probative of pretext. Thus, Ward creates no genuine issue of fact as to whether Gulfstream's justification is mere pretext. Because there is no evidence that would allow a reasonable fact finder to infer that Gulfstream's proffered reasons are pretextual, the Court must grant summary judgment for Gulfstream.

## C. Reverse Race Discrimination

The above analysis applies to the race discrimination claim as well as the age discrimination claim. Ward argues that when Gulfstream changed the skills matrix in order to accommodate Chisolm and cover up their plot to discriminate against blacks and

workers over forty, they were guilty of reverse race discrimination against Ward.

Because this theory has even less merit than the age discrimination claim and is based on the same inventive argument and unsupported conclusory allegations, it fails for the same reasons. There is absolutely no probative evidence of any intent by Gulfstream to discriminate against anyone on the basis of race. Accordingly, the Court grants summary judgment for the Defendant Gulfstream on this issue.

## IV. Conclusion

To survive a motion for summary judgment a plaintiff in an age or race discrimination case must produce probative evidence that the employer intended to discriminate on the basis of a protected characteristic. A plaintiff cannot rely on conclusory allegations or unreasonable inferences but must generate a genuine dispute of material fact. Because the Court finds that there is no genuine issue of material fact as to whether Gulfstream intended to discriminate on the basis of age or race, the Court GRANTS summary judgment for the Defendant Gulfstream.

SO ORDERED.